## R. F. YARBOROUGH et al. v. W. A. MOORE et al.

### (Filed 6 October, 1909.)

**1. Executors and Administrators — Fiduciary Capacity — Sale to Make Assets—Suit of Creditors—Jurisdiction.**

It is a fiduciary duty of the personal representative of deceased to sell land to make assets to pay his debts, when the personal property is insufficient, and upon his failure to do so an action will lie in the Superior Court by a single creditor to subject the land to the payment of his claim, though the action may be converted afterwards into a creditor's suit.

**2. Executors and Administrators—Debts—Judicial Sales—Judgment, Motion to Set Aside—Findings—Appeal and Error.**

The facts found by the judge of the Superior Court, having evidence to support them, are conclusive on appeal from his denial of a motion to set aside a judgment directing that decedent's lands be sold by his personal representative to pay his debts. Clark's Code, sec. 417.

**3. Executors and Administrators—Debts—Sale of Lands—Innocent Purchaser—Infants—Parties—Representation—Process.**

An innocent purchaser for value without notice of land sold under judgment of the Superior Court by the personal representative of deceased to make assets to pay. his debts, takes free from the claim of children, not *in esse*, at the time of sale, to whom the lands descend subject to the life estate of their father, when the father, as life tenant, had been served with process and was bound by the order of sale, affirming *Carraway v. Lassiter*, 139 N. C., 145.

**4. Judicial Sales — Motion to Set Aside — Innocent Purchaser — Infants—Parties—Process—Service—Proof—Record Evidence.**

A purchaser at a judicial sale is only required to see that the court has jurisdiction of the parties and the cause of action. And when it appears that certain parties defendant were minors and interested in the lands sold, that guardians *ad litem* had been appointed for them and that the sheriff had served the summons on them by reading it, and it nowhere appears in the record that they were under the age of fourteen so as to require service by copy, etc., as provided by the statute, the service on them is apparently sufficient and the rights of an innocent purchaser at the sale will not be disturbed.

**5. Same—Equitable Considerations—Lapse of Time.**

Upon a motion to set aside a judicial sale of lands in which the rights of an innocent purchaser for value have intervened as against the claims of infants, setting forth irregular service, the courts should give much weight to such facts as show a representation of the infants by a guardian acting in good faith; that the payment of a debt for which the lands were sold was justly due and established by judgment which the lands should have been sold to pay and that the land brought a fair price as indicated by the sale being confirmed by the court upon due consideration; and under such facts in this case, the defendants were not enti-

tled to a favorable consideration of the court, they having waited many years after reaching their maturity before moving to vacate the judgment.

APPEAL by defendants W. A. Strickland and J. M. Stallings from *O. H. Allen, J.,* April Term, 1909, of FRANKLIN.

This is a motion to set aside the judgment of the Superior Court in the above-entitled action, which was brought for the purpose of selling land to pay the debts of the testatrix, Martha Moore. She died, leaving a will, in which she appointed the defendants W. A. and J. C. Moore executors. The motion to set aside the judgment was made by Mabel, Annie and Joshua Moore, children of J. W. Moore and Frances Strickland; Mary Stallings and Sidney Harris, children of Sarah E. Harris. By her will the testatrix devised certain lands to her son, J. W. Moore, for his natural life, and then to his bodily heirs, share and share alike, and an undivided one-third interest in other land she devised to her daughter, Sarah E. Harris, wife of S. A. Harris, in fee. There is a provision for equality in the division of her estate, real and personal, among her children, but it is not necessary, for the purpose of deciding the case, to set it out. The testatrix died in 1874, and in 1879 R. F. and W. H. Yarborough, the plaintiffs in this action, recovered judgment against her executors for the sum of $871.52, with interest and costs, which judgment was later assigned to the Wachovia National Bank. This action was commenced in October, 1883, against the executors and devisees, under the will, to sell the lands of the testatrix for the payment of her debts and liabilities, the personal estate having been exhausted. The court ordered a sale of the land at the Fall Term, 1884; the sale was made 2 March, 1885; the commissioner made his report to the court, and at November Term, 1885, the sale was in all respects confirmed and title ordered to be made to the purchasers, upon payment of the purchase money, except as to certain tracts allotted to Sarah Harris and others, which were ordered to be resold. The commissioner, in obedience to this order, sold said lands and reported the sale to the May Term, 1886, of the Superior Court, and at January Term, 1888, his report was confirmed as of May Term, 1886, with directions to make title to the purchasers, the purchase money having been paid. Final judgment was entered in 1891.

His Honor, *Judge O. H. Allen,* found the facts from the evidence before him, and it appears from his findings that the only controversy relates to the land devised to J. W. Moore and Sarah E. Harris. It appears therefrom that there was no service of the summons upon J. W. Moore, who had not married and did

not marry until ten years after the final judgment in this action. At his own request, he was permitted by the court to come in and make himself a party to the action, bought a part of the land at the sale under the order of the court, was served with sundry notices in the cause, as purchaser, and accepted a deed from the commissioner for the land bought by him. The said John W. Moore had three children by his marriage, namely, Mabel Moore, Annie Moore and Joshua Moore, who were, of course, not parties to this action, and who now move to set aside the judgment.

As to the interest of Sarah E. Harris, it appears from the findings of fact that she was living at the time of her mother's death, but died before this suit was commenced, and her interest descended to her children, Frances Strickland, Mary Stallings and Sidney Harris, subject to the estate by the courtesy of A. S. Harris, husband of Sarah Harris, who survived her. Frances Strickland was of full age when this suit was commenced. Mary Stallings is now about forty-one years old, and Sidney Harris was under fourteen years of age at the time the suit was commenced. The motion to set aside the judgment was made by the heirs of J. W. Moore and the heirs of Sarah Harris. It appears that guardians *ad litem* were appointed by the court for all the infants, and filed answers to the petition for the sale of the land. It does not appear that any copy of the summons was delivered to the infant under fourteen years of age, or "to his father, mother or guardian, or to any person having the care and control of him, or with whom he resided, or in whose service he was employed." Revisal, sec. 440, subsec. 2.

The court further finds that the proceeding throughout was fairly and honestly conducted; that the persons now moving to set aside the judgment were not prejudiced thereby, as they had no real or meritorious defense thereto; that the persons who have bought the land are innocent purchasers, having purchased for full value and without notice of any defects or irregularities, and that the motion to vacate the judgment was not made within a reasonable time, it having been made about eighteen years after the final judgment in the cause.

The court thereupon denied the motion and entered judgment for costs against those by whom it was made. They excepted and appealed.

*Bickett & White, F. S. Spruill* and *William H. Ruffin* for appellees.

*W. M. Person* and *T. T. Hicks* for appellants.

WALKER, J., after stating the case: It is well settled that the
Superior Court had jurisdiction of the proceeding to sell the land
for the purpose of paying the debts of the testatrix.    Laws 1876-
'77, ch. 241; Revisal, sec. 129; *Haywood v. Haywood,* 79 N. C.,
42; *Clement v. Cozart,* 107 N. C., 695; *Fisher v. Trust Co.,* 138
N. C., 90. A single creditor may proceed by action in that court
to subject the land of his deceased debtor to the payment of his
claim. *Pegram v. Arrington,* 82 N. C., 326; *Shober v. Wheeler,*
144 N. C., 409. Especially may he sue to compel the personal
representative to perform his fiduciary duty and sell the land for
the payment of debts. *Pelletier v. Saunders,* 67 N. C., 261.
The statute makes it the duty of the personal representative to
sell the land when the personal property is insufficient to pay
the debts, and there is no good reason why the creditor should
not be permitted to compel a performance of this duty by suit
when the representative refuses to take any action in the prem-
ises. We hold, therefore, against the contention of those who
now move to set aside its judgment, that the court had jurisdic-
tion of the cause.

We are concluded by the findings of the judge as to the facts,
when there is any evidence to support them; and, without dis-
cussing the question more fully with special reference to the tes-
timony, we will consider the case upon the facts as found by him.
Clark's Code, sec. 417, and cases cited in the notes. There is
evidence in the record which tends to establish the facts as found.

We will first refer to the legal merits of the motion, so far as
the children of J. W. Moore are concerned; and for the purpose
of disposing of this branch of the case we will assume that he
acquired only a life estate by the will of his mother, Martha
Moore. He was a party to the action, and was, of course, bound
by the judgment. The question presented is: Are his children
also bound under the doctrine of representation? They were
not *in esse* when the judgment was rendered, and were not born
for some years afterwards. The law is careful to preserve and
safeguard the integrity of judicial sales. Public policy requires
that such should be the case, in order to inspire confidence in the
regularity and validity of judicial proceedings in which such
sales are ordered, and to induce persons to become purchasers.
The language of *Ruffin, J.,* in *Sutton v. Schonwald,* 86 N. C.,
198, expresses clearly the rule of the law in this respect: "In
such cases the law proceeds upon the ground as well of public
policy as upon principles of equity. Purchasers should be able
to rely upon the judgments and decrees of the courts of the
country; and, although they may know of their liability to be
reversed, yet they have a right, so long as they stand, to presume

that they have been rightly and regularly rendered, and they are not expected to take notice of the errors of the court or the laches of parties. · The contrary doctrine would be fatal to judicial sales and values of titles derived under them, as no one would buy at prices at all approximating the true value of property if he supposed that at some distant day his title might be declared void because of some irregularity in the proceeding, altogether unsuspected by him and of which he had no opportunity to inform himself." We said, in *Millsaps v. Estes,* 137 N. C., 544: "It is freely admitted to be the general rule, as argued by the defendants' counsel, that innocent purchasers, or those who have purchased at a judicial sale, without notice of any irregularity in the proceedings and judgment under which the sale was made, will be protected when it appears that the court had jurisdiction of the parties and of the subject-matter of the proceedings, and that the judgment on its face authorized the sale. This is but another way of stating the general principle that the judgment or decree of a court having general jurisdiction over the subject-matter, subsisting unreversed, must be respected, and sustains all things done under it, notwithstanding any irregularity in the course of the proceedings or error in the decision. *Williams v. Harrington, supra.* Such a judgment will therefore sustain the title of a purchaser at a sale made under it, if he had no notice of the alleged defect in the proceedings. *Sutton v. Schonwald,* 86 N. C., 198; *England v. Garner,* 90 N. C., 197." What we have quoted is applicable generally to this case.

As to the interest of the children of J. W. Moore, we have held in a similar case that they were sufficiently represented by him, although he was but a life tenant of the property. *Carraway v. Lassiter,* 139 N. C., 145. In that case (at pages 151-152) the Court said: "It appears that since the filing of this petition Mrs. Carraway has died. The petitioners are not parties to the original proceeding; they claim title to the land as remainderman after the termination of the life estate of Mrs. Carraway, under the will of Mrs. Whitehead. . . . If the proceeding had been one in which the life tenant had, for any proper reason, invoked the aid of the court to sell the land as for partition, only those who were parties, either personally or by representation, would be bound by the decree. The proceeding is based upon the theory that the executor is, by order of the court, selling the lands of his testatrix, which are subject to the payment of her debts, and the devisees or heirs at law are brought in that they may show cause why he may not have license to do so. If the petitioners had been *in esse* at the time the proceeding was insti-

tuted, it would have been necessary, to divest their interest, to make them parties. It cannot be that a person indebted may, by devising his lands, upon contingent limitation to parties not *in esse,* prevent their sale for payment of his debts until all who may by possibility take are born, or every possible contingency is at an end. Mrs. Carraway, for the purpose of enabling the court to proceed in the cause, represented the entire title, and children thereafter born to her are bound by the judgment." This citation is sufficient to sustain the ruling of the Court that the children of J. W. Moore are not entitled to vacate the sale.

Let us now consider the case so far as it relates to the interest of the children of Sarah Harris. An examination of the record nowhere shows that any of her children were under the age of fourteen years, which would require the service of the summons by copy and compliance with the other provisions of the statute. It is true that a guardian *ad litem* was appointed for them, and also for other infants, but this would only imply that they were minors and not indicate at all their respective ages. The fact that the sheriff served the summons by reading it to those infants would indicate, if anything, that they were over the age of fourteen years. So that, looking at the record, there was nothing to put any person, who intended to buy, upon his guard. Service of the summons by reading it to a minor is good, unless he is under the age of fourteen years, and, as to a purchaser, it so appears on the face of the record or he has actual knowledge of the fact. A purchaser at a judicial sale is only required to see that the court has jurisdiction of the parties and the cause of action. *Williams v. Johnson,* 112 N. C., 424. In *Syme v. Trice,* 96 N. C., 243, one of the parties was an infant, but the record did not disclose the fact. The court failed to appoint a guardian *ad litem* for him. His motion, after he arrived at full age, was denied, upon the ground that the proceeding was merely irregular and he could not have relief as against an innocent purchaser of the land which was sold under an order of the court. The proceedings were apparently regular and the purchaser was protected. So, in *Matthews v. Joyce,* 85 N. C., 264, viewing the question from a different standpoint, the Court said: "To declare a legal proceeding void for the want of such service upon a few of the class of whom the larger number, with identical interests in the result, have been regularly brought into court, would be to establish a rule subversive of much judicial action, unsettling titles dependent thereon and introducing distrust and confusion in regard to the tenure of estates, the injurious consequences of which can hardly be foreseen or estimated; and we do not feel at liberty, after so long a delay, to disturb the decree

on this ground." It was also held in *Harrison v. Hargrove,* 120 N. C., 96, that where the record shows service of process apparently sufficient, the rights of an innocent purchaser will not be disturbed. So, in *England v. Garner,* 90 N. C., 197, one of the parties to the proceeding, which was *ex parte,* was an infant, who had no knowledge of it, though there was nothing in the record to suggest his infancy. With reference to these facts, the Court said: "If he were an infant, this did not render the judgment as to him absolutely void; it was irregular and might, upon proper application, have been set aside—not, however, to the prejudice of *bona fide* purchasers without notice."

It must be remembered that the court finds, in this case, that the parties who now seek to set aside the judgment had no defense to the proceeding and were not in the least prejudiced by what was done in it. The infants were all represented by guardians *ad litem,* who, in good faith, so far as appears, represented them and their interests, and filed answers. The debt was justly due, as had been established in a prior action by judgment, and the land should have been sold to pay it. The sale by the commissioner was reported to the court, and, upon due consideration, it was confirmed. The land presumably brought a fair price. If it had not, the court would hardly have confirmed the sale. Facts such as these have much weight with the court in passing upon questions of this kind. *Williamson v. Hartman,* 92 N. C., 236. Furthermore, it appears that the parties have waited for many years, after reaching their majority, before moving in this case to vacate the judgment; and, in view of the facts as found by the court, and this long delay, we do not see that they have made any showing which entitles them to the favorable consideration of the Court, under the principles of the law applicable to this class of cases. *Williamson v. Hartman,* 92 N. C., 236; *Williams v. Williams,* 94 N. C., 732; *Edwards v. Moore,* 99 N. C., 1; *Weaver v. Jones,* 82 N. C., 440; *Harrison v. Hargrove,* 109 N. C., 346; *Matthews v. Joyce, supra; White v. Morris,* 107 N. C., 92.

The motion to set aside the judgment cannot be considered by us as a meritorious one, in any aspect of the case. The respondents have purchased the land in good faith and for a valuable consideration and without notice of any fatal irregularity apparent upon the face of the record. Indeed, an examination of the record would seem to indicate that the proceeding was conducted with due regard to the prescribed forms of law, and there is nothing in it to notify a prudent and careful man that any of the parties had not been duly summoned to appear in the cause or that his or her interest had not been properly repre-

sented. There was no finding by the court that the purchasers had actual notice of any irregularity which would invalidate the judgment.

Affirmed.