W. A. J. PINNELL ET AL. v. W. C. BURROUGHS ET AL.

(Filed 24 February, 1915.)

1. **Executors and Administrators—Deeds and Conveyances—Recitals—Lost Records—Evidence—Judgment—Estoppel.**

   The question of the ownership of the lands belonging to the estate of a decedent in proceedings to sell them to make assets to pay his debts by his personal representative is directly involved in the proceedings, and the judgment therein is conclusive upon the parties thereto and will estop them in a collateral or direct proceeding from claiming the lands from this or other sources while the judgment continues in force.

2. **Executors and Administrators—Deeds and Conveyances—Recitals—Lost Records—Evidence—Parties—Statutes—Appeal and Error.**

   When the court records are shown to have been lost or destroyed, the recitals in the deed of an administrator, executor, etc., are made "*prima facie* evidence of the existence, validity, and binding force of the decree, order, or judgment, or other record, referred to or recited in the deed," by Revisal, sec. 341; and the statute also makes the deed, record, and decree valid and binding as to all persons mentioned or described therein; and where the title to a party is made to depend upon a deed of this character, and the trial judge rules that the deed could not be considered in evidence, though the loss of the records therein recited could be shown, it erroneously deprives the party of his rights to develop his case, and an appeal to the Supreme Court will directly lie.

3. **Same—Parties—Presumptions.**

   In this action to recover lands the defendant relied for title upon a deed made by an executor in proceedings to sell lands of the decedent to make assets to pay his debts, reciting that the present plaintiff "and others were defendants" in the proceedings; and under the admissions in the pleadings it is held that not only the plaintiff, but the others mentioned in the deed, were the heirs of the deceased, they being the brothers and sisters of the plaintiff, and raised a presumption, *prima facie* at least, that they were necessary parties in the former action and bound by the judgment therein.

APPEAL by defendants from *Ferguson, J.,* at January Term, 1915, of WARREN.

Action to recover the possession of land, brought by W. A. J. Pinnell, Robert L. Pinnell, and Lena Andrews, as children and heirs at law of Jackson Pinnell, against the defendants, who are the children of Lucy W. Pinnell, the widow of Jackson Pinnell, by her subsequent marriage with John H. Burroughs, who was her second husband. The land in dispute is that which was allotted to the widow of Jackson Pinnell, and plaintiffs alleged that at her death the defendants wrongfully took possession thereof. Plaintiffs further allege that Jackson Pinnell, at the time of his death, was seized of the said land, and that it descended to them as his heirs at law. Defendants admit that Jackson Pinnell was at one time seized of the said land, but deny that it descended to plaintiffs as his heirs. On the contrary, they aver that the "reversionary interest" therein, or the fee subject to the widow's dower, was sold under a judgment of the Superior Court of Warren County, where the land is situated, in a suit or proceeding entitled Henry B. Hunter, executor of Willis Lloyd, deceased, against Willis A. J. Pinnell (one of the plaintiffs in this action) and others, who were the other plaintiffs.

The court held that, in the state of the pleadings, the burden was upon the defendants, and they offered as evidence "the deed of Henry B. Hunter, executor of Willis Lloyd, deceased, to John H. Burroughs, as evidence of title in the defendants, they being the children of said John H. Burroughs, now deceased; to which the plaintiffs objected. The defendants proposed and offered to prove the loss of the records recited in the said deed, and further insisted that the deed could not be attacked collaterally." The court permitted the deed to be read as evidence. It had been proved 25 November, 1870, and registered 4 March, 1871, and was in the following words and figures:

This indenture, made and entered into this the 20th day of September, 1870, between Henry B. Hunter, executor of Willis Lloyd, party of the first part, and John H. Burroughs, party of the second part, all of Warren County, State of North Carolina:

Witnesseth, That the said party of the first part was by a decree of the Superior Court of the said county of Warren, made in a certain cause wherein the said party of the first part was plaintiff and Willis A. J. Pinnell, an infant under 21 years old, and others were defendants, ordered to sell, for the purpose of paying the debts of the said Willis Lloyd, which his personal property was insufficient to discharge, certain real estate of the said Willis Lloyd, towit, the reversion after the life estate of Mrs. Lucy W. Burroughs in a tract of land of 238 acres, situated in the said county of Warren, on the waters of Rich Neck, adjoining

the lands of Jacob Parker, Henry Williams, and others, same being the tract which was assigned to the said Lucy W. Burroughs, then Lucy W. Pinnell; and whereas the said party of the first part, in pursuance of the said decree, did on the 14th day of May, 1870, sell the said real estate at auction at the courthouse door in the town of Warrenton, when said party of the second part became the purchaser in the sum of $1,000 and paid the whole of the purchase money in cash; and whereas, upon report of the said sale to the said court, the same was in all respects confirmed, and said party of the first part was by final decree in said cause ordered to execute a deed for said real estate to the said party of the second part: Now, therefore, in consideration of the premises and of the said sum of $1,000, the receipt of which is hereby again acknowledged, the party of the first part has given, granted, bargained, sold, and conveyed, and doth by these presents, give, grant, bargain, sell, and convey unto the said party of the second part and his heirs, forever, the real estate heretofore described. To have and to hold the same, with all appurtenances thereto belonging, to him the said party of the second part and his heirs, forever. In testimony whereof the said party of the first part has hereunto set his hand and affixed his seal on the date first above written.

H. B. HUNTER,    [SEAL]
*Executor of Willis Lloyd.*

It was admitted that the plaintiff, Willis A. J. Pinnell, was heir at law of Willis Lloyd, deceased. The court was of the opinion, and so ruled, that even if the defendants should show the loss of the records recited in the deed, the deed could not be considered as evidence of title against the plaintiffs, who are the heirs at law of Jackson Pinnell, the sale being had, as recited in said deed, by the executor of Willis Lloyd and the property sold as the property of Lloyd to pay Lloyd's debts and not the debts of Pinnell, and Pinnell's heirs are not bound by the recitals of said deed. The defendants duly excepted to this ruling and, in deference thereto, offered no other evidence. The court thereupon directed the jury to find for the plaintiffs, which was done, and defendant appealed, after reserving exceptions and assigning errors.

*Thomas M. Pittman for plaintiffs.*
*John H. Kerr and A. C. & J. P. Zollicoffer for defendants.*

WALKER, J., after stating the facts: We are of the opinion that there was error in the ruling of the court. It may be conceded that there is no connection between Jackson Pinnell and Willis Lloyd, and in the view taken by us of the case it was not necessary that it should have been shown. The object of the defendants was not to prove that the heirs of Jackson Pinnell had lost the title, which it is alleged had descended to

them, by a sale of the land under the decree of the court in the suit by the executor of Willis Lloyd, but to show that the plaintiffs in this action were parties, as defendants and as heirs of Willis Lloyd, in the proceeding brought by the executor of Willis Lloyd to have the land sold for the payment of his debts. If they were parties to the latter suit, they are bound and concluded by the judgment rendered therein, and it can make no difference whether they acquired title to the land as the heirs of Jackson Pinnell or as heirs of Willis Lloyd, as they are estopped by the judgment without regard to the source from which they may have derived title. If they had any other right or title to the land at the time they were called upon to answer the complaint, they should have disclosed it, and pleaded it, and having failed to do so, they are concluded by the judgment as to the title, which was alleged to have been in Willis Lloyd, and will not be heard to aver against it in this action. *Armfield v. Moore,* 44 N. C., 157; *Carter v. White,* 134 N. C., 474; *Gregory v. Pinnix,* 158 N. C., 147. The Court, in *Owens v. Needham,* 160 N. C., 381, quoting from and approving *Coltrane v. Laughlin,* 157 N. C., 287, held it to be a well recognized doctrine here and elsewhere that "when a court having jurisdiction of the cause and the parties renders judgment therein, it estops the parties and their privies as to all issuable matter contained in the pleadings, and though not issuable in the technical sense, it concludes, among other things, as to all matters within the scope of the pleadings which are material and relevant and were in fact investigated and determined on the hearing," citing *Gillam v. Edmonson,* 154 N. C., 127; *Tyler v. Capeheart,* 125 N. C., 64; *Tuttle v. Harrell,* 85 N. C., 456; *Fayerweather v. Ritch,* 195 U. S., 277; *Aurora City v. West,* 74 U. S., 82, 103; *Chamberlain v. Gaillard,* 26 Ala., 504; 23 Cyc., pp. 1502-4-6. It was stated again, and applied to a proceeding for the sale of land for assets, in *Smith v. Huffman,* 132 N. C., 600. One question involved directly in a proceeding to sell lands for assets is the intestate's ownership of the land, and if he is not the owner and any other party to the record is the owner or has an interest therein which would be prejudiced by a decree which does not recognize and protect it, he is estopped so long as the decree stands unreversed, and the doctrine is said to be founded on the principles of justice and fair dealing, as we find declared in the foregoing cases. The party is estopped for the reason, in part, that he has been delinquent, as he had his day in court and a fair opportunity to assert his right, which he deliberately failed to do, and he will not afterwards be heard to call the matter in question, for the law does not permit the same question to be again litigated under such circumstances. If it did, there never would be an end to controversy. The parties to the proceeding entitled Hunter, executor of Willis Lloyd, v. Willis A. J. Pinnell and others are estopped as to the right and title being in

the intestate, Willis Lloyd. But who were the parties? It is not necessary to inquire beyond the fact that Willis A. J. Pinnell, who is a party, as plaintiff, in this action, was one of them, for the court directed a verdict against the defendants, and if they are entitled to recover an interest in the land, in any view of the case, his direction was erroneous. This brings us to the consideration of the next question.

We must take it that the records of the court had been lost or destroyed, because the court refused to consider the deed or its recitals as evidence of title, even if they had been lost. The statute, Revisal, sec. 341, makes the recital of an executor, administrator, or commissioner for the sale of land *"prima facie* evidence of the existence, validity, and binding force of the decree, order, judgment, or other record, referred to or recited in said deed," where the record or files containing the original entries and papers have been lost or destroyed. *Isler v. Isler,* 88 N. C., 576; *Hare v. Holloman,* 94 N. C., 14; *Everett v. Newton,* 118 N. C., 919. The statute also makes the said deed, record, and decree valid and binding as to all persons mentioned or described therein, and who were parties or purported to be parties thereto. *Chief Justice Smith* said, in *Hare v. Holloman, supra,* that "The rule is indispensable when, as in the present case, the original papers in the cause have been lost or destroyed." If the decree or judgment is to be taken as *prima facie* valid, as the statute provides, this necessarily implies that the proper parties were made defendants by service of process, voluntary appearance, or otherwise, because it could not be valid unless the court had jurisdiction of the cause and the parties, which is prerequisite to its validity. *Kello v. Maget,* 18 N. C., 414. The recitals are sufficient to justify the inference, by the aid of the statute, that all proper steps were regularly taken for the sale of the land, and we have often held that such a record cannot be attacked collaterally. Apparently the heirs of Willis Lloyd were made parties, as the case could not proceed without them, and Willis A. J. Pinnell is one of them, which, with the facts stated and admitted in the first sections of the complaint and answer, gives rise to the presumption, *prima facie,* at least, that "the others mentioned in the deed were his heirs, as they are the brothers and sisters of Willis A. J. Pinnell, all being children of Jackson Pinnell."

The rule as to attacking records is well stated by *Justice Reade* in *Doyle v. Brown,* 72 N. C., 393: "Where a defendant has never been served with process, nor appeared in person or by attorney, a judgment against him is not simply voidable, but void; and it may be so treated whenever and wherever offered, without any direct proceedings to vacate it. And the reason is that the want of service of process and the want of appearance is shown by the record itself, whenever it is offered. It would be otherwise if the record showed service of process or appear-

ance, when in fact there had been none. In such case the judgment would be apparently regular, and would be conclusive until by a direct proceeding for the purpose it would be vacated. A plaintiff needs not to be *brought* into court; he *comes* in. A judgment is of no force against a person as plaintiff unless the record shows him to be plaintiff. If the record shows him to be plaintiff when in fact he was not, then it stands, as where the record shows one to be defendant when he was not. In both cases the record is conclusive until corrected by a direct proceeding for that purpose." And this rule has been followed ever since in all the cases upon the subject. *Barefoot v. Musselwhite,* 153 N. C., 208; *Cooke v. Cooke,* 164 N. C., 287. Discussing the validity of judgments, with special reference to proceedings for the sale of land, *Chief Justice Smith* said, in *Sumner v. Sessoms,* 94 N. C., 376: "It is true, the record produced does not show that notice was served on the infant or upon her guardian *ad litem,* nor does the contrary appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and if not, the judgment must stand and cannot be treated as a nullity until so declared in some impeaching proceeding instituted and directed to that end. The irregularity, if such there be, may be such as to warrant, in this mode, a judgment declaring it null; but it remains in force until this is done." This doctrine was approved in *Rackley v. Roberts,* 147 N. C., 201; *Hargrove v. Wilson,* 148 N. C., 439; *Burgess v. Kirby,* 94 N. C., 575; and has been recognized in other cases too numerous to be mentioned. Some of the more important ones will be found in the last two cases above cited.

By his remark, that the proof which defendant proposed to offer, as to the loss of the record, would not avail them by making the recitals in the deed evidence of their title to the land, the presiding judge prevented the defendants from developing their case and made their defeat a certainty. They were not required to do the vain thing of going on with their proof, if indeed they had any more or needed it. The ruling was fatal to their case, and they did well to desist. The ruling was error, as also was the peremptory instruction to find for the plaintiff.

The plaintiffs may by a direct proceeding in the original cause correct the record if it fails to speak the truth, but cannot assail it collaterally in this action. They may be barred of any remedy by the long delay, or for other reason; but we do not decide as to this, the facts not being now before us. If a judgment is irregular, a court will not always set it aside, and have declined to do so when the rights of *bona fide* purchasers for value and without notice of the irregularities would be prejudiced. *Matthews v. Joyce,* 85 N. C., 264; *Sutton v. Schonwald,* 86 N. C., 198; *England v. Garner,* 90 N. C., 197; *Harrison v. Hargrove,* 120 N. C., 96; *Rackley v. Roberts, supra; Yarborough v. Moore,* 151 N. C., 116. We

cannot too often repeat what was said by the Court in *Sutton v. Schonwald, supra,* as to the necessity of safeguarding the integrity of judicial sales, after they had stated that this wholesome doctrine is founded upon public policy, as well as the principles of equity: "Purchasers should be able to rely upon the judgments and decrees of the courts of the country, and though aware of their liability to be reversed, yet they have a right, so long as they stand, to presume that they have been rightly and regularly rendered, and they are not expected to take notice of the errors of the court or the laches of parties. A contrary doctrine would be fatal to judicial sales and the values of title derived under them, as no one would buy at prices at all approximating the true value of property if he supposed that his title might at some distant day be declared void because of some irregularity in the proceeding altogether unsuspected by him and of which he had not opportunity to inform himself. Under the operation of this rule occasional instances of hardship may occur, but a different one would much more certainly result in mischievous consequences and the general sacrifice of property sold by order of the court."

The recitals in the deed of Henry B. Hunter, executor, to John H. Burroughs are as explicit as those in the deed which was the subject of consideration in *Hare v. Holloman, supra,* and, as held in that case, are *prima facie* adequate to sustain the action of the court. *Irvin v. Clark,* 98 N. C., 437. They are fuller and more definite than some recitals which have been held sufficient to show the validity of titles acquired at judicial sales.

There must be a new trial because of the error committed by the court in its ruling upon the legal force and effect of the deed as evidence. It may be that the defendants, who are the heirs of J. H. Burroughs, purchaser at the sale, will be able to prove more clearly, at the next trial, that the other defendants in the former suit, besides Willis A. J. Pinnell, were the heirs of Willis Lloyd.

New trial.